**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| BOUBACAR DIALLO, | ) CASE NO. 1:25-CV-00026-CAB |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT & RECCOMMENDATION** |
| Defendant, | ) |

**I. Introduction**

Plaintiff, Boubacar Diallo ("Diallo" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On October 25, 2021, Diallo filed an application for SSI, alleging a disability onset date of December 23, 2019 and claiming he was disabled due to arthritis, anemia, gastrointestinal disease, major depression, PTSD, anxiety disorder, racing thoughts, constant lower back pain, extreme fatigue, sleeplessness, pains, aches, difficulty getting along with others, fear of crowds, constant moodiness, and dislike activities/daily routine. (ECF No. 7, PageID #: 196). Diallo amended this complaint indicating that his disability began on December 23, 2020. (ECF No. 7, PageID #: 312).

The application was denied initially and upon reconsideration, Diallo requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 192). On April 4, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 45). On August 17, 2023, an ALJ held a supplemental hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 45). On November 22, 2023, the ALJ issued a written decision finding Diallo was not disabled. (ECF No. 7, PageID #: 65). The ALJ's decision became final on November 14, 2024, when the Appeals Council declined further review. (ECF No. 7, PageID #: 29-34).

On May 22, 2025, Diallo filed his Complaint to challenge the Commissioner's final decision. (ECF No. 10). The parties have completed briefing in this case. (ECF Nos. 10, 12). Diallo raises the following issue on appeal: whether the administrative law judge adequately evaluated Plaintiff's severe mental impairments in determining his residual functioning capacity. (ECF No. 10 at 1).

### III. Background[1]

**A. Relevant Hearing Testimony**

    **1. Diallo**

The ALJ summarized the relevant testimony from Diallo's April 4, 2023, hearing:

> At the April 4, 2023, hearing, the claimant testified that he last worked in July 2021 but has not worked since. He said he lives with his wife, and she works part time four hours a day. He said he has a driver's license, is able to drive, but gets very anxious and has panic attacks so he does not drive often. He said he has no driving restrictions.

(ECF No. 7, PageID #: 51).

Additionally, the ALJ summarized the relevant testimony from Diallo's August 17, 2023,

---

[1] Diallo's appeal relates to opinions regarding his mental impairments. Because he did not challenge anything regarding his physical impairments, the Court's discussion will relate to his mental impairment records only.

supplemental hearing:

> At the supplemental hearing held on August 17, 2003 [sic.], the claimant said he is disabled because he is unable to function the way he used to … He said has mental health counseling every Thursday from 5p to 6p. He said his mental health problems affect his daily life because he is afraid to go out, he does not enjoy anything, and he locks himself in a dark room. He said he has panic attacks when he goes to the hospital.

(ECF No. 7, PageID #: 51-52).

### B. Relevant Medical Evidence

The ALJ also summarized Diallo's health records and symptoms:

> The claimant complained of anxiety and depression (e.g., 2F) and said symptoms include decreased appetite, difficulty concentrating, irritability and feeling very sensitive, and alarmed at noises like phone ringing (e.g., 6F/25). Some examinations do show depressed and/or angry mood on exam (2F/9, 16, 39F/20, 6F/8, 19); posture and motor behavior was tense (6F/8); thought content had ruminations (6F/19); he was grimacing, restlessness and tense, speech was pressured, rapid and swooping or exaggerated intonations, suspicious, with suspicious thought content (6F/26, 7F/40).
>
> The claimant was prescribed medication, including fluoxetine, gabapentin, risperidone, Seroquel, and trazadone as well as therapy for this impairment (e.g., 6F/9) and the claimant said since taking medication he has been stable and feels as though it was working (2F/10, 29) and treatment notes state that he was gradually improving (e.g., 2F/23). The claimant also attended therapy and said that simply by talking about his concerns in therapy was helpful to him and he has a general sense of relief after his sessions (6F/19, 7F/40).
>
> While the record shows treatment improved his symptoms, it also shows an exacerbation of symptoms when the claimant does not take his medication, and treatment notes show his providers were 'unclear' on his use of medication. For instance, in July 2021, when the claimant alleges that he had stopped working, he presented with "rapidly worsening symptoms" and said he "does better when taking Fluoxetine" but also said he had been "out of meds for a long time" and treatment notes state "From personal history the concern is

patient may be misusing meds" (2F/37).

On May 25, 2022, the claimant presented to the emergency department with depression and chronic thoughts of death, "since he has not been able to take his medications for three months" (8F/29, 12F/20). He was admitted and his medication, restarted. At discharge, he said he felt happy because he was able to get a lot of things done that he needed while in the hospital. He said he knows that life is still hopeful. He said he was able to work with social workers and laid groundwork for good thing and helped his perspective on life. He felt well rested from the increase in Seroquel and said he felt his feelings have improved "so much" with medications (8F/9). He started therapy and by November 2022 was noted to be stable (25F/2, 47, 26F, 27F).

Moreover, treatment notes also show that despite his complaints, mental status examinations are generally unremarkable. Specifically, he was generally noted to be in no apparent distress, cooperative, engaged, and well developed. Posture and motor behavior are normal; with normal dress, grooming, and personal hygiene. Facial expressions are congruent with mood. Speech is appropriate quality, quantity, and organization of sentences (2F/9, 14, 17, 19, 22, 26, 28, 32, 8F/8-9, 39F/3, 8, 6F/8, 19, 26, 9F/7, 22F/10, 29F/29, 34, 89). He had normal and/or euthymic mood and affect and normal behavior (2F/17, 19, 22, 26, 28, 8F/8-9, 9F/7, 39F/3, 8, 22F/10, 29F/13, 29, 34, 89). Attention, concentration, and thought content all within normal limits (2F/14, 17, 19, 22, 26, 28, 32, 6F/8, 19, 26, 7F/40, 64, 8F/8-9, 9F/7, 22F/10, 29F/13, 29). He had no abnormal perceptions (2F/14, 17, 19, 22, 28, 6F/8, 19, 26, 7F/40). He was well oriented to person, place, and time (2F/14, 17, 19, 22, 26, 28, 6F/8, 19, 24, 8F/8-9, 20F/89). Eye contact is good (2F/17, 19, 22, 28, 6F/19, 7F/40, 64). Motor activity is unremarkable (2F/14, 17, 19, 22, 28, 6F/19, 7F/40, 64). Demeanor is appropriate for situation (2F/14, 17, 19, 22, 28, 6F/19, 7F/64). Insight and judgement were fair and/or appropriate (2F/14, 19, 22, 28, 6F/19, 7F/64, 9F/7, 29F/89). His memory and cognition were grossly intact (2F/14, 17, 19, 22, 26, 28m 6F/19, 7F/40, 64, 8F/8-9, 9F/7, 22F/10, 29F/13, 29). He had appropriate organization of thoughts (2F/32, 6F/26). He was not nervous or agitated on exam (12F/18). Thought process was coherent, logical and well-organized, goal directed, with good abstract reasoning. Thought content was unremarkable, and showed no delusions, normal perception with no paranoia; no gross delusions and no evidence of responding to auditory, visual, or other internal stimuli (2F/14, 17, 19, 22, 26, 28, 29F/89, 6F/19, 64, 9F/7, 29F/13). He had no suicidal or homicidal ideations (2F/37, 8F/8-9, 29F/89). In February 2022 he said he felt stressed about

4

returning to work but may have to do so (2F/8).

Treatment notes state "despite patient complaints he appears somewhat more collected and less anxious than on previous visits" (29F/88). He returned several other times, seeking voluntary inpatient psychiatric care, but treatment notes state that the claimant, "is very noncompliant and poor historian continues to ruminate in obsessive fashion and very unclear what of his prescribed medications he is taking and what he is not" (29F/47-48). Medication adjustments were recommended, and he was referred for psychotherapy (9F/8; 10F, 29F/79). The claimant reported that he improved with medication (29F/41, 35). He started therapy and by November 2022 was noted to be stable (25F/2, 47, 26F, 27F).

[Claimant] reported being out of medication in January and February 2023 (31F/107, 105, 121, 32F/18) and examination showed no apparent distress, cooperative, and well developed. He was well oriented, and judgement, insight, and memory were all within normal limit. His mood was depressed, distrustful, and hopeless (32F/24). In February 2023, treatment notes state that he "constantly complains he is out of refills and experiencing severe symptoms (32F/12). By March 14, 2023, he said he treated with medication and overall, he seems to be doing better (32F/2). He was in no apparent distress, and was cooperative, and well developed. His posture, behavior, mood and affect were all within normal limits., He was well oriented, and judgement, insight, and memory were all within normal limit, Attention, concentration, and thought content were all within normal limits (32F/3). Treatment notes in March 2023 state "Concern most recently has been frequent request for Gabapentin which had been renewed with refills. Received another order per another provider with refill of Oxycodone." (39F/19). "It is difficult to determine regarding whether patient is being manipulative and blaming current pharmacy for discrepancy, but he was reminded of frequent requests through entered messages since last refill" (39F/19). Examination on May 1, 2023, showed normal appearance, normal mood and affect and normal behavior (39F/8).

The claimant also presented to the emergency department with suicidal ideation on May 8, 2023. He said he was out medication "for some months." Toxicology was positive for oxycodone (40F/167). Nevertheless, despite his lack of treatment and complaints, he was cooperative and calm. He remained in behavioral control and did not require any chemical or physical restraints. He was noted to be oriented to person, place, time and situation. His appearance was appropriate and neat and his behavior

5

>appropriate and cooperative. He had appropriate interaction with the examiner. He had normal speech, and linear and organized thought, He had no delusions. He denied illusions. He denied auditory and visual hallucinations. He denied self injury. He denied homicidal ideation. His insight and judgment were fair (40F/161-162, 167, 170). The claimant was voluntarily admitted though there are no other notes regarding this admission or date of discharge (40F/172). The most recent mental status assessments were on June 3 and June 5, 2023, when the claimant was noted to have normal appearance and oriented to person, place, and time, with pleasant/normal mood and benign affect and normal behavior (39F/3, 40F/92).

(ECF No. 7, PageID #: 55-56).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

>3. The claimant has the following severe impairments: lumbar degenerative disc disease, osteoarthritis of right knee, right elbow epicondylitis, amputation of finger on right hand, major depressive disorder, post-traumatic stress disorder, and anxiety (20 CFR 416.920(c)).
>
>4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except never climb ladders ropes or scaffolds; frequently crawl; can frequently reach in front and laterally with the right dominant upper extremity; can frequently handle and frequently finger and feel with dominant right hand, avoid work operating hazardous equipment such as power saws and jack hammers [due to right epicondylitis] no commercial driving. Can perform routine tasks without hourly piece rate type work. Can interact with coworkers and supervisors for work related purposes and tasks such as asking questions clarifying instructions gathering information helping but no directing the work of others; but should avoid jobs that have a requirement to provide services directly to the public.

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

(ECF No. 7, PageID #: 48-51, 63).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance

benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Diallo raises the following issue on appeal: whether the administrative law judge adequately evaluated Plaintiff's severe mental impairments in determining his residual functioning capacity. (ECF No. 10 at 1).

To support this argument, Diallo asserts the following: "[t]he ALJ's interpretation of the facts and her evaluation of compelling evidence of the nature and severity of the Plaintiff's mental impairments and his RFC is legally deficient," and "[t]he ALJ failed to follow applicable regulations and well-settled policy and procedures, depriving the Plaintiff of a substantial right." (ECF No. 10 at 2). Claimant also takes the position that the ALJ, "fails to provide a logical bridge between her analysis and her findings regarding the severity of Plaintiff's mental impairments and

8

the limitations imposed by the same." (ECF. No. 10 at 21) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted).

However, the Commissioner argues that substantial evidence supports the ALJ's RFC finding concerning Claimant's mental limitations because the ALJ considered, "the medical evidence of record, including reported symptoms and activities of daily living, examination findings, and treatment history/efficacy, including medications and side effects." (ECF No. 10 at 14). The Commissioner further asserts, "[t]o the extent the ALJ did not address all of Plaintiff's complaints or objective findings specifically, an ALJ is 'not required to analyze the relevance of each piece of evidence individually.' Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *See id.; Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953).

In determining the adequacy of the ALJ's RFC determination, a reviewing court must focus on the explanation given by the ALJ's decision without finding further support in the records not specifically included in the decision. *See Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence"). As further detailed below, to find substantial evidence here the Court need look no further than the ALJ's decision. Prior to determining that Diallo could perform light work at Step Four, the ALJ determined Diallo's RFC. (ECF No. 7, PageID #: 48-62). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). Here, the ALJ determined that Diallo had the ability:

> to perform light work as defined in 20 CFR 416.967(b) except never climb ladders ropes or scaffolds; frequently crawl; can frequently reach in front and laterally with the right dominant upper extremity; can frequently handle and frequently finger and feel with dominant

9

>right hand, avoid work operating hazardous equipment such as power saws and jack hammers [due to right epicondylitis] no commercial driving. Can perform routine tasks without hourly piece rate type work. Can interact with coworkers and supervisors for work related purposes and tasks such as asking questions clarifying instructions gathering information helping but no directing the work of others; but should avoid jobs that have a requirement to provide services directly to the public.

(ECF No. 7, PageID #: 29-30). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

The ALJ acknowledged Diallo's mental impairments including, major depressive disorder, post-traumatic stress disorder, and anxiety and agreed that they were severe impairments at Step Two. (ECF No. 7, PageID #: 48). In her determination of the RFC, the ALJ included a lengthy summary of the medical evidence and then ALJ detailed her analysis as follows:

>In addition to the medical evidence, the undersigned has considered the claimant's allegations with regard to the evidence of record and finds his alleged symptoms and limitations are not generally consistent with the record as a whole. Regarding his activities of daily living, the claimant indicated that he lives in an apartment with his wife. He said he is able to care for his personal needs, with some physical and mental limitations, but needs reminders for doctors' appointments, to pick up prescriptions, or to pay bills. He does not prepare any meals or do any house or yard work. He said he travels by public transportation or medical transportation but said he is not able to go out alone. He said he does not shop or manage finances.

10

> He needs to be reminded to go places. He is afraid of crowds. He checked of all the items when asked what his conditions affect, specifically, lifting, walking, sitting, standing, kneeling, bending, reaching, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, getting along with others, and even talking and hearing. He said he could walk a few blocks. He said he could pay attention for a few seconds and does not finish what he starts. He is not able to follow spoken or written instructions, and barely gets along with authority. He said he cannot handle stress at all and does not like changes in routine (3E). He said he has a driver's license, is able to drive (Hearing Testimony). Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's limited activities are considered to be outweighed by other factors discussed in this decision, specifically the medical evidence.

(ECF No. 7, PageID #: 59).

It is well settled that ALJs are not required to reference every piece of evidence in their decision. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker*, 99 F. App'x at 665); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to *consider* all of the evidence in the record, [s]he is not required to *discuss* each item of evidence in her opinion." (Emphasis in original) (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Moreover, the ALJ included substantial evidence of Diallo's clinical observations in her formulation of the RFC. For example, the ALJ specifically cited evidence of Diallo's mental impairment symptoms and chronological records of his mental status during examinations in determining that some examinations demonstrated abnormalities in psychiatric presentation and

11

most clinical observations were "generally unremarkable." (*See* ECF No 7, PageID #: 56, 88, 553-624 (ALJ noted Claimant's symptoms caused by anxiety and depression including, "decreased appetite, difficulty concentrating, irritability and feeling very sensitive, and alarmed at noises like phone ringing")) (*See* ECF No 7, PageID #: 56, 554, 561, 803, 815, 822, 887, 2224) (ALJ noted that during, "[s]ome examinations [Diallo] do[es] show depressed and/or angry mood on exam [,] posture and motor behavior was tense [,] thought content had ruminations [,] he was grimacing, restlessness and tense, speech was pressured, rapid and swooping or exaggerated intonations, suspicious, with suspicious thought content")) (citations omitted).

Additionally, the ALJ expressly considered other mental health treatment notes,

> show[ing] that despite his complaints, mental status examinations are generally unremarkable. Specifically, he was generally noted to be in no apparent distress, cooperative, engaged, and well developed. Posture and motor behavior are normal; with normal dress, grooming, and personal hygiene. Facial expressions are congruent with mood. Speech is appropriate quality, quantity, and organization of sentences. He had normal and/or euthymic mood and affect and normal behavior (citation omitted). Attention, concentration, and thought content all within normal limits (citation omitted). He had no abnormal perceptions (citation omitted). He was well oriented to person, place, and time (citation omitted). Eye contact is good (citation omitted). Motor activity is unremarkable (citation omitted). Demeanor is appropriate for situation (citation omitted). Insight and judgement were fair and/or appropriate (citation omitted). His memory and cognition were grossly intact (citation omitted). He had appropriate organization of thoughts (citation omitted). He was not nervous or agitated on exam (citation omitted). Thought process was coherent, logical and well-organized, goal directed, with good abstract reasoning. Thought content was unremarkable, and showed no delusions, normal perception with no paranoia; no gross delusions and no evidence of responding to auditory, visual, or other internal stimuli.

ECF No 7, PageID #: 57, 553-54, 559, 562-64, 567, 571, 572, 577, 804, 815, 820, 822, 887, 911, 949-50, 1054, 1362, 1667, 1683, 1688, 1743, 2071, 2207, 2212, 2391-92, 2397, 2400).

Furthermore, the ALJ discussed that Claimant's symptoms improved with medications,

> The claimant was prescribed medication, including fluoxetine, gabapentin, risperidone, Seroquel, and trazadone as well as therapy for this impairment (e.g., 6F/9) and the claimant said since taking medication he has been stable and feels as though it was working (2F/10, 29) and treatment notes state that he was gradually improving (e.g., 2F/23). The claimant also attended therapy and said that simply by talking about his concerns in therapy was helpful to him and he has a general sense of relief after his sessions (6F/19, 7F/40).

(ECF No 7, PageID #: 55-56). Additionally, the ALJ noted Claimant's hospitalizations for mental health evaluations, "[o]n May 25, 2022, the claimant presented to the emergency department with depression and chronic thoughts of death, 'since he has not been able to take his medications for three months.'" *Id.* The Claimant also presented to the emergency department with suicidal ideation on May 8, 2023. *Id.*

Following her explanation of her analysis of the relevant medical evidence, the ALJ further explained that:

> Although the claimant has described daily activities, which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's limited activities are considered to be outweighed by other factors discussed in this decision, specifically the medical evidence…while [Claimant] reported mental health symptoms, including panic attacks and social dysfunction, he was regularly noted to be pleasant and cooperative, with a normal mood and affect, and good memory, concentration, and attention. He also acknowledged throughout the record that medication helped his symptoms, and the record shows exacerbations when not compliant with medication; nevertheless, he generally had normal mental status examinations. Thus, while the record supports severe mental

>impairments, the record demonstrates that he is able to perform routine tasks without hourly piece rate type work, can interact with coworkers and supervisors for work related purposes and tasks (as detailed above) and should avoid jobs that have a requirement to provide services directly to the public. For these reasons, and others stated in this decision, the undersigned finds the claimant's allegations as to her symptoms are generally inconsistent with the record as a whole.

(ECF No. 7, PageID #: 58). The ALJ considered Claimant's medical evidence, subjective symptoms, inconsistencies in the record, and formulated these findings into the RFC. Accordingly, this demonstrates that the ALJ reasonably explained how she considered Diallo's mental impairments and how she accommodated these symptoms when she formulated Diallo's RFC.

Nevertheless, Diallo repeatedly contends that the ALJ "fails to address" evidence in the record and "failed to adequately assess the impact of Plaintiff's impairment-related limitation on his capacity to engage in work activity on a sustained basis." (ECF No. 10 at 21-22). Yet, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Additionally, Diallo asserted the following argument,

>Based on this RFC, the ALJ relied on vocational expert testimony

14

> in determining that Plaintiff is unable to perform his past relevant work at step four (citation omitted). At step five, she relied on the vocational expert's testimony in concluding that this RFC does not preclude the performance of unskilled light work existing in significant numbers (citation omitted). Said finding is not supported by substantial evidence. Specifically, the ALJ failed to adequately assess the Plaintiff's ability to sustain this type of work as a result of his severe mental impairments.

(ECF No. 10 at 12).

As Diallo suggests, at step five, the Commissioner has the burden of proof to show "that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform." *Id*. To meet this burden, the Commissioner must make a finding "supported by *substantial evidence* that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted) (emphasis added). "This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, . . . if the question accurately portrays [the claimant's] individual physical and mental impairments." *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted); *see also O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020).

The Sixth Circuit has found that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only '*if the question accurately portrays [plaintiff's] individual physical and mental impairments.*'" *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987) (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984)) (alteration in original) (emphasis added). "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a

15

claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny,* 745 F.2d at 218; *see also Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir.1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments.").

As discussed above, the ALJ utilized substantial evidence in forming Diallo's RFC. Additionally, the ALJ posed a hypothetical to the vocational expert that accurately portrayed the RFC. The vocational expert then testified that given all of these factors [Claimant] would be able to perform the requirements of representative occupations such as: (1) Mail Clerk (2) Garment Sorter, and (3) Office Helper. (ECF No. 7, PageID #: 64). Thus, the ALJ's finding that the RFC does not preclude the performance of unskilled light work existing in significant numbers in the national economy is supported by substantial evidence. In sum, the ALJ properly considered Claimant's mental impairments in formulating the RFC and did not err in her consideration of the vocational expert testimony.

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Diallo's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 22, 2025

s/ <i>Carmen E. Henderson</i><br>
CARMEN E. HENDERSON<br>
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).